Slip Op. 18–135

UNITED STATES COURT OF INTERNATIONAL TRADE

|   |   |
|---|---|
| THE STANLEY WORKS (LANGFANG) FASTENING SYSTEMS CO., LTD. and STANLEY BLACK & DECKER, INC.  Plaintiffs,  v.  UNITED STATES,  Defendant. | Before: Richard K. Eaton, Judge  Court No. 16-00053 |

**OPINION**

[The United States Department of Commerce's Final Results are sustained.]

Dated:   October 10, 2018

*Lawrence J. Bogard*, Neville Peterson LLP of Washington, DC, argued for plaintiff. With him on the brief was *Peter J. Bogard*.

*Sosun Bae*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Zachary Simmons*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Eaton, Judge: Before the court is The Stanley Works (Langfang) Fastening Systems Co., Ltd. and Stanley Black & Decker, Inc.'s (collectively, "Stanley" or "plaintiff") motion for judgment on the administrative record challenging the final results of the United States Department of Commerce ("Commerce" or the "Department") in *Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 14,092 (Dep't Commerce Mar. 16, 2016) ("Final Results"). This case is a

complement to *Stanley Works (Langfang) Fastening Sys. Co. v. United States*, 42 CIT __, Slip Op. 18-99 (Aug. 13, 2018) ("*Stanley I*"), by which were decided each of the substantive issues raised here. In *Stanley I*, the Court had the benefit of, and cited to, some of the scholarly materials Stanley seeks to have introduced on the record here.[1]

Stanley objects to the Final Results generally as not conforming to the statute or Commerce's regulations. Stanley also claims that Commerce unlawfully rejected portions of its original case brief. *See* Pl.'s Br. 18-49. Defendant, the United States (the "government" or "defendant"), on behalf of Commerce, argues that (1) Commerce lawfully rejected Stanley's original case brief; (2) that 19 C.F.R. § 351.414(f) (2007) does not apply to administrative reviews; and (3) Commerce reasonably interpreted the relevant statute and regulations when conducting its "differential pricing" analysis to conclude that Stanley had engaged in targeted dumping. Def.'s Br. 4-6.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012). For the reasons set forth below, Commerce's Final Results are sustained.

**BACKGROUND**

In August 2008, Commerce issued an antidumping duty order covering certain steel nails from the People's Republic of China. *See Certain Steel Nails From the People's Republic of China*, 73 Fed. Reg. 44,961 (Dep't Commerce Aug. 1, 2008) (order). On September 30, 2014,

---

[1] The materials plaintiff seeks to include here are: Robert Coe, "It's the Effect Size, Stupid: What Effect Size Is and Why it Is Important"; Jacob Cohen, "The Earth Is Round (p,0.05)"; Jacob Cohen, Statistical Power Analysis for the Behavioral Sciences, second edition; Jacob Cohen, Statistical Power for the Behavioral Sciences, Revised Ed.; Jacob Cohen "Things I Have Learned (So Far)"; Effect Size FAQs; Heinz Kohler, Statistics for Business and Economics; Paul W. Vogt, Dictionary of Statistics and Methodology: A Nontechnical Guide for the Social Sciences; Webster's New World Dictionary of American Language. *See generally*, Rejected and Retained Case Br., C.R. 203.

Commerce initiated the sixth administrative review of the order, which covered the period August 1, 2013 to July 31, 2014. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 79 Fed. Reg. 58,729 (Dep't Commerce Sept. 30, 2014). Stanley was named as one of two mandatory respondents for individual review. P.R. Doc 27.

Commerce published notice of the Preliminary Results on September 4, 2015. *See Certain Steel Nails From the People's Republic of China*, 80 Fed. Reg. 53,490 (Dep't Commerce Sept. 4, 2015) P.D. 216, and accompanying Preliminary Decision Memorandum, P.D. 217 ("Preliminary Results"). In its Preliminary Results, Commerce, using its differential pricing analysis,[2] found that 76.8 percent of Stanley's U.S. sales passed Commerce's Cohen's *d* test, and therefore, concluded that there was a pattern of export prices for comparable merchandise that differed significantly among purchasers, regions, or periods of time. Preliminary I&D Memo at 32-35.

Moreover, Commerce preliminarily found that a comparison of the weighted-average of an exporter's normal values to the weighted-average of its export prices for comparable merchandise (the "A-A" method) could not account for the price difference because Stanley's weighted-average dumping margin crossed the *de minimus* threshold when calculated under an "alternative" comparison method (i.e., the A-T method). *See* Preliminary Results Analysis Mem., P.R. 218 at 13-14. Thus, because the total value of Stanley's "passing" sales represented 66 percent or more of the total value of its total U.S. sales, Commerce compared the weighted average of the normal values to the export prices (or constructed export prices) of individual

---

[2]     For a detailed discussion of Commerce's differential pricing analysis and its relation to the targeted dumping statute (19 U.S.C. § 1677f-1(d)(1)(B)), see this Court's opinion in *Stanley I*, 42 CIT at __, Slip Op. 18-99 at 3-12.

transactions (the "A-T" method), and, applying the A-T method to all of Stanley's sales, preliminarily calculated a weighted-average dumping margin of 12.51 percent for Stanley.

On October 30, 2015, following the issuance of the Preliminary Results, Stanley submitted its case brief to Commerce, largely disputing the legality of Commerce's differential pricing analysis. *See* Rejected and Retained Case Br., C.R. 203. Stanley supported these arguments with, among other things, citations to various academic sources. On November 18, 2015, Commerce rejected Stanley's brief because "it reference[d] new factual information," which, "[p]ursuant to 19 CFR 351.301(c)(5)" was due "no later than July 29, 2015, 30 days before the preliminary results of th[e] review." As a result, Commerce instructed Stanley to re-file the brief without the rejected material. On November 20, 2015, Stanley resubmitted a redacted case brief. *See* Redacted Case Brief, P.R. 205.

On March 16, 2016, Commerce published its final results. *See* Final Results, 81 Fed. Reg. at 14,092. On April 4, 2016, Commerce published a notice to correct certain errors in the Final Results margin chart. 81 Fed. Reg. 19,136 (Dep't Commerce Apr. 4, 2016). In the Final Results, Commerce, again using its differential pricing analysis, found that 76.8 percent of Stanley's sales passed the Cohen's *d* test, and, using the A-T method, calculated a weighted-average dumping margin of 11.95 percent. *See* Corrections Notice, 81 Fed. Reg. at 19,136; *see also* Final Results Analysis Memo at 2, C.R. 210. Had Commerce used the A-A method, Stanley's margin would have been zero.

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19

U.S.C. § 1516a(b)(1)(B)(i) (2012). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).

## DISCUSSION

**I.   Commerce's Rejection of Stanley's Case Brief**

As a procedural matter, Stanley first argues that Commerce unlawfully rejected its original case brief. Pls.' Br. 10. Stanley maintains that when Commerce rejects factual information pursuant to its regulations, it must "provide written notice stating the reasons for rejection," and that Commerce failed to do so here. Pls.' Br. 10 ("Commerce did not explain its basis for rejecting Stanley's Case Brief. [Commerce] did not articulate any standard for determining that the authorities were 'factual information.'" (citing 19 C.F.R. § 351.301(c)(5)(i) [3])). Thus, for plaintiff, Commerce's "unsubstantiated assertion" that the

---

[3]   19 C.F.R. § 351.301(c)(5) provides that

[Commerce] will reject information filed under paragraph (c)(5) that satisfies the definition of information described in § 351.102(b)(21)(i)-(iv) and that was not filed within the deadlines specified above. All submissions of factual information under this subsection are required to clearly explain why the information contained therein does not meet the definition of factual information described in § 351.102(b)(21)(i)-(iv), and must provide a detailed narrative of exactly what information is contained in the submission and why it should be considered. The deadline for filing such information will be 30 days before the scheduled date of the preliminary determination in an investigation, or 14 days before verification, whichever is earlier, and 30 days before the scheduled date of the preliminary results in an administrative review, or 14 days before verification, whichever is earlier.

19 C.F.R. § 351.301(c)(5). In addition, 19 C.F.R. § 351.301(c)(5)(i) provides that Commerce "will issue a memorandum accepting or rejecting the information and, to the extent practicable, will provide written notice stating the reasons for rejection."

rejected material constituted "factual information" fails the regulation's requirement, and was therefore unlawful. Pls.' Br. 10.

Next, plaintiff argues that, even if the court accepts Commerce's rejection notice as lawful, the rejected authorities themselves do not meet any definition of "factual information" under the regulations. Pls.' Br. 10 (citing 19 C.F.R. § 351.102(b)(21)). Plaintiff claims that the intended definition of "factual information" is "information of a respondent-specific nature," as evidenced by the 2013 promulgation of the current regulation. Pls.' Reply Br. 5 ("[The regulatory] deadline reflects Commerce's interest in ensuring that it has sufficient time to confirm the accuracy of the information submitted, *i.e.*, information of a respondent-specific nature." (citing *Definition of Factual Information and Time Limits for Submission of Factual Information,* 78 Fed. Reg. 21,246, 21,247 (Dep't Commerce April 10, 2013)). Thus, for plaintiff,

---

Under 19 C.F.R. § 351.102(b)(21), factual information is defined as:

(i) Evidence, including statements of fact, documents, and data submitted either in response to initial and supplemental questionnaires, or, to rebut, clarify, or correct such evidence submitted by any other interested party;

(ii) Evidence, including statements of fact, documents, and data submitted either in support of allegations, or, to rebut, clarify, or correct such evidence submitted by any other interested party;

(iii) Publicly available information submitted to value factors under § 351.408(c) or to measure the adequacy of remuneration under § 351.511(a)(2), or, to rebut, clarify, or correct such publicly available information submitted by any other interested party;

(iv) Evidence, including statements of fact, documents and data placed on the record by the Department, or, evidence submitted by any interested party to rebut, clarify, or correct such evidence placed on the record by the Department; and

(v) Evidence, including statements of fact, documents, and data, other than factual information described in paragraphs (b)(21)(i)–(iv) of this section, in addition to evidence submitted by any other interested party to rebut, clarify, or correct such evidence.

because the rejected sources are not respondent-specific, they should be treated like administrative determinations or judicial decisions (*i.e.*, "matter[s] of public record and publically available") and be accepted without physical copies on the record. Pls.' Br. 11; *see also* Pls.' Reply Br. 5.

Finally, plaintiff claims that Commerce's rejection here conflicts with its own past practice. Pls.' Br. 11 ("Commerce has relied on and/or responded to the bulk of these authorities in other proceedings without physical copies being present on the administrative record." (citing *Certain Steel Nails From the People's Republic of China: Final Results of Fourth Antidumping Administrative Review*, 79 Fed. Reg. 19,316 (Dep't Commerce Apr. 8, 2014) ("Fourth Review"); *Certain Steel Nails From the People's Republic of China; Final Results of Antidumping Administrative Review* 2012-2013, 80 Fed. Reg. 18,816 (Dep't Commerce Apr. 8, 2015) ("Fifth Review"))).[4]

For the court, the materials Stanley hoped to put on the record were closer to being part of its legal argument than factual information as defined in 19 C.F.R. § 351.102(b)(2). That is, these articles are referenced by Stanley to support its argument that Commerce's differential pricing analysis did not conform to the statute. Nonetheless, because of the recent decision in *Stanley I*, the court need not determine the lawfulness of Commerce's rejection letter and its finding that the rejected sources constitute "factual information" under the regulations. *Stanley I*

---

[4] Specifically, Stanley argues that Commerce "has repeatedly cited the Coe article as an authority supporting the [Cohen's *d* test] without a physical copy on the record," that Stanley had cited to the dictionary definition in its Case Brief in both the Fourth and the Fifth "Nails from China Reviews," and that of the remaining authorities, Stanley had cited to four of them in both the Fourth and Fifth Nails reviews, to a fifth only in the Fourth Review, and a six only in the Fifth Review. Pls.' Br. 11. Stanley claims that in those cases, Commerce accepted the authorities without requiring physical copies on the record. Pls.' Br. 11. Indeed, Stanley notes that even the Final Results cited one of the rejected publications to support Commerce's use of the Cohen's *d* test "even though a copy [was] not on the record." Pls.' Br. 12.

involved the same arguments with respect to Commerce's differential pricing analysis as those presented here. Unlike here, however, plaintiff timely submitted physical copies of the academic articles used to support its argument—the same sources rejected in this review. *See id.*, 42 CIT at __, Slip Op. 18-99 at 22 n.19. Taking those submissions into account, the Court found that Commerce's differential pricing analysis was a reasonable interpretation of the statute. *See id.*, 42 CIT at __, Slip Op. 18-99 at 49 ("Accordingly, the court finds that Commerce's differential pricing analysis is a reasonable interpretation of 19 U.S.C. § 1677f–1(d)(1)(B)."). Therefore, even if Commerce were to have committed a procedural error in this review by not accepting the materials, it cannot be said that this error resulted in substantial prejudice to Stanley. *See, e.g., Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006). Accordingly, the court will not remand this case with instructions that Commerce accept Stanley's original case brief.

## II.   Commerce's Use of the Differential Pricing Analysis is in Accordance with Law

Next, Stanley makes several arguments contesting Commerce's differential pricing analysis as applied in the Final Results. In particular, plaintiff argues that (1) the Final Results contravene the "allegation" and "appropriate statistical techniques" requirements of 19 C.F.R. § 351.414(f) (2007); (2) Commerce's Cohen's *d* test is not reasonably used to evaluate targeted dumping; (3) Commerce incorrectly calculated the Cohen's *d*, resulting in a bias toward finding prices that differ significantly among purchasers, regions or periods of time; (4) differential pricing contravenes 19 U.S.C. § 1677f-1(d)(1)(B) because Commerce's ratio test does not describe a pattern and the meaningful difference test fails to explain why the A-A method cannot account for the pattern of price differences identified by the Cohen's *d* test; (5) differential pricing contravenes congressional intent as expressed in the legislative history; and

(6) Commerce's implementation of differential pricing is not reasonable because Commerce includes sales that "pass" the Cohen's *d* test in the base groups for other test groups and the Cohen's *d* test fails to account for circumstances of sale. *See* Pl.'s Br. 18-49.

These same arguments were made by plaintiff in *Stanley I*, and found to be without merit. *See generally*, *Stanley I*, 42 CIT at __, Slip Op. 18-99 at 52 ("[T]he court finds that Commerce's method is a reasonable one for determining if targeted dumping may be occurring . . . ."). The court has carefully reviewed the *Stanley I* opinion and concludes that it was correctly decided. Therefore, because plaintiff brings no substantive claims in addition to those resolved by *Stanley I*, the court finds no reason to depart from its holding in that case. *See generally*, *id*. Accordingly, for the reasons stated in *Stanley I*, the court finds that Stanley's arguments disputing Commerce's differential pricing analysis are without merit, and plaintiff's motion for judgment on the agency record is denied.

## CONCLUSION

Therefore, the court denies plaintiff's motion for judgment on the agency record and Commerce's Final Results are sustained. Judgment shall be entered accordingly.

/s/ Richard K. Eaton
Richard K. Eaton, Judge

Dated: October 10, 2018
       New York, New York